# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**MRI ASSOCIATES OF ST. PETE, INC.,**
**d/b/a Saint Pete MRI, as assignee**
**individually, and on behalf of all those**
**similarly situated,**

        **Plaintiff,**

**v.**                                    **Case No.  8:10-cv-713-T-30AEP**

**STATE FARM MUTUAL AUTOMOBILE**
**INSURANCE COMPANY and STATE**
**FARM FIRE AND CASUALTY**
**COMPANY,**

        **Defendants.**
_____/

## ORDER GRANTING IN PART AND DENYING PART MOTION TO DISMISS AND ORDER FOR MEDIATION AND TO SHOW CAUSE

        THIS CAUSE comes before the Court upon Defendants' Motion to Dismiss the Class Action Complaint (Dkt. #6) and Plaintiff's Response (Dkt. #33).  Defendants ask this Court to dismiss Plaintiff's Complaint in its entirety.  The Court, having reviewed the pleadings and accompanying memoranda, determines that the motion should be granted in part and denied in part.

        Plaintiff provides magnetic resonance imaging (MRI), x-rays, and other diagnostic services to Florida residents who have sustained personal injuries in motor vehicle accidents.  Plaintiff provided services to an insured of each Defendant and received an assignment of the insured's personal injury protection (PIP) benefits.  Plaintiff claims Defendants' policy

requires them to pay 80% of the reasonable amount of all medically necessary bills and that Defendants paid less than that amount by using Florida's statutory PIP fee schedule in determining the amounts to be paid.

The parties agree that Defendants are using the new statutory fee schedule in calculating payments.  Plaintiff alleges this use is unlawful.  It contends there are two separate payment "methodologies:" the "reasonable amount methodology" called for by the policy language and "the alternative fee schedule methodology" provided in the statute. Plaintiff argues that the "new PIP statute now allows PIP insurers to select between two alternative payment methodologies for all health care providers.  Although the insurance companies' insurance policies only identify the reasonable amount methodology, they are instead paying claims at much lower prices using the alternative fee schedule methodology not identified in their policies."  (Plaintiff's response memorandum, p. 10-11).  Plaintiff asserts that, unless insurance carriers amend their policies to include the new permissive fee schedule, insurance companies must continue to use only the reasonable amount methodology contained in the policy.

Plaintiff sues for the following relief:

**Count I:**    a class action for declaratory relief asking this Court to declare the Defendants are not lawfully authorized to pay their insureds' medical benefit claims pursuant to the statutory PIP fee schedule described in Florida Statute 627.736(5)(a)(2)a-f (2007-2008);

**Count II:**  a class action seeking injunctive relief against the Defendants, ordering the Defendants to cease and desist from using the statutory fee schedule; and

**Count III:**   an individual (non-class action) breach of contract claim alleging Defendants failed to pay 80% of a reasonable amount of Plaintiff's bills as required by Defendants' policy.

Plaintiff's claims stem from Florida's 2007 enactment of a new PIP statute which included a new fee schedule which insurers were allowed to use to calculate payments to medical providers (the PIP fee schedule).  Florida Statute § 627.736(5)(a)2 (2007-2008).  The prior PIP statute lapsed on October 1, 2007.  The new PIP statute was signed by the Governor on October 11, 2007, and took effect on January 1, 2008.  Between October 1st and December 31st, 2007, there was no PIP statute in place (the PIP gap period).  Since this lawsuit pertains to the newly adopted fee schedule, the PIP gap period is not germane to this lawsuit.

The Court will first address Plaintiff's request for class action status and then its request to amend if dismissal is granted.  Where the propriety of a class action procedure is plain from the initial pleadings, a district court may rule on this issue prior to the filing of a motion for class certification.  *Stan Smith v. Network Solutions, Inc. and Verisign, Inc.*, 135 F. Supp. 2d 1159 (N.D. Ala. 2001).

In its two class action counts, Plaintiff pleads a class and a pre-suit sub-class. Florida's statutory PIP benefit scheme requires, before filing suit, that a claimant send a pre-

suit notice of intent to initiate litigation specifying the date of treatment, service provided, type of benefit, and exact amount claimed to be due.  Fla. Stat. § 627.736(10) (2007-2008). These requirements are intended to reduce fraud and increase settlement before litigation. To accomplish this, an insurer must examine each claim individually as to medical necessity, the amount billed, the service provided, and the fees customarily charged in each locale. What is a reasonable charge in one area may not be reasonable for another.  Therefore, a class action for PIP benefits is inappropriate.  *Shenandoah Chiropractic, P.A. v. National Specialty Insurance Company*, 526 F. Supp. 2d 1283 (S.D. Fla. 2007).  After consideration of these factors, the calculation of a reasonable amount also weighs strongly against the use of a class action.  *State Farm Mutual Automobile Insurance Co. v. Sestile*, 821 So. 2d 1244 (Fla. 2d DCA 2002).  Plaintiff contends that these cases are inapplicable to the instant case because here the class action counts do not seek monetary relief, but only a declaration that Defendants unlawfully used the statutory fee schedule and an injunction against future use.

Plaintiff describes the class as "all those similarly situated persons who are underpaid by any of the Defendants based, in whole or in part, on their unlawful interpretation and/or application" of the PIP statutes.  The class is defined to include a "pre-suit notice sub-class" which is defined as "all persons and/or entities who: (a) are a member of the class, and (b) submitted a pre-suit notice to one or more of the Defendants pursuant to § 627.736(10), Florida Statutes (2007-2008)."  Plaintiff states that this pre-suit notice class would only include those persons who had previously submitted a pre-suit notice.

It is unnecessary for this Court to explore whether Plaintiff has successfully avoided the holdings of *Shenandoah* and *Sestile*.  At bottom, this case is about whether Defendants have paid 80% of the reasonable amount due for a medically necessary bill.  Plaintiff constructs a "two methodology" argument contending that Defendants may not use the statutory fee schedule in calculating a reasonable amount unless they first amend their policies to include the fee schedule.  This argument fails because it assumes the amount provided by the fee schedule is not reasonable for every bill, submitted by all medical providers, from every locale.

Plaintiff's claims, even for declaratory relief, require proof that the amounts provided in the statutory fee schedule are not reasonable.  And, as explained in *Shenandoah* and *Sestile*, what constitutes a reasonable amount will vary based on many factors specific to the individual claim.  For example, a medical necessity determination is specific to each individual claim.   Rates customarily charged may vary widely from community to community throughout the state.  The evaluation of a reasonable amount rests on an examination of the various factors on a case-by-case basis and can only be determined by a fact-finder.  And different fact-finders may reach different conclusions from the same facts.  This is exactly why the court in *Sestile* held these types of cases were not appropriate for a class action proceeding.

Therefore, the Court determines that a class action is not appropriate in this case.  Counts I and II, the class action counts, will be dismissed.  The Court now addresses the

propriety of allowing Plaintiff to amend to seek declaratory and injunctive relief individually.

Such amendment should be allowed unless it would be futile to do so.

The Court begins this analysis with a review of the relevant statutory and policy

language.  Both the PIP statute and Defendants' policies require payment of:

> (a)   Medical benefits. – Eighty percent of all **reasonable expenses** for **medically necessary** medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices, and medically necessary ambulance, hospital, and nursing services. . . .

The new PIP statute also provides:

> (5) CHARGES FOR TREATMENT OF INJURED PERSONS.--
>
> (a)1. Any physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for a bodily injury covered by personal injury protection insurance **may charge the insurer and injured party only a reasonable amount** pursuant to this section for the services and supplies rendered, and the insurer providing such coverage may pay for such charges directly to such person or institution lawfully rendering such treatment, if the insured receiving such treatment or his or her guardian has countersigned the properly completed invoice, bill, or claim form approved by the office upon which such charges are to be paid for as having actually been rendered, to the best knowledge of the insured or his or her guardian. In no event, however, may such a charge be in excess of the amount the person or institution customarily charges for like services or supplies. **With respect to a determination of whether a charge for a particular service, treatment, or otherwise is reasonable, consideration may be given to evidence of usual and customary charges and payments accepted by the provider involved in the dispute, and reimbursement levels in the community and various federal and state medical fee schedules applicable to automobile and other insurance coverages, and other information relevant to the reasonableness of the reimbursement for the service, treatment, or supply.**
>
> 2. **The insurer may limit reimbursement to 80 percent of the following schedule of maximum charges:**

a. For emergency transport and treatment by providers licensed under chapter 401, 200 percent of Medicare.

b. For emergency services and care provided by a hospital licensed under chapter 395, 75 percent of the hospital's usual and customary charges.

c. For emergency services and care as defined by s. 395.002(9) provided in a facility licensed under chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

d. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

e. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

f. For all other medical services, supplies, and care, 200 percent of the allowable amount under the participating physicians schedule of Medicare Part B. However, if such services, supplies, or care is not reimbursable under Medicare Part B, the insurer may limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by the insurer.

\* \* \*

5. If an insurer limits payment as authorized by subparagraph 2., the person providing such services, supplies, or care may not bill or attempt to collect from the insured any amount in excess of such limits, except for amounts that are not covered by the insured's personal injury protection coverage due to the coinsurance amount or maximum policy limits.

Fla. Stat. § 627.7407 (2007) (emphasis added).

Defendants' policies provide many sources it may consider in determining a reasonable amount:

. . . . To determine whether a charge is reasonable we may consider usual and customary charges and payments accepted by the provider, reimbursement levels in the community and various federal and state medical fee schedules applicable to automobile and other insurance coverages, and other information relevant to the reasonableness of the reimbursement for the service, treatment or supply.

We will not pay any charge that the **_No-Fault Act_**[1] does not require us to pay, or the amount of any charge that exceeds the amount the **_No-Fault Act_** allows to be charged.

(Exs. 1-2, Defendants' motion, amendatory endorsement 6910.3 at 3-4).

Plaintiff's argument assumes the statutory PIP fee schedule is not part of Defendants' policy and that Defendants cannot pay according to the schedule without first amending their policy. But the statute specifically provides that the new fee schedule is deemed incorporated into all PIP policies in effect in Florida on or after January 1, 2008. Fla. Stat. 627.7407(2) (2007). Defendants contend this language incorporated the fee schedule into their policies. Plaintiff did not argue to the contrary. Florida law supports the position of the Defendants. Insurance policies are deemed by law to incorporate applicable statutes. _Florida Farm Bureau Casualty Insurance Company v. Cox_, 943 So. 2d 823 (Fla. 1st DCA 2006).

Even if the new fee schedule is not incorporated into the policy by operation of law, Plaintiff's argument also assumes Defendants are not allowed to use the schedule in determining a reasonable amount. This assumption is contrary to the language of the policies which allow Defendants to consider "various federal and state medical fee schedules applicable to automobile and other insurance coverages" in determining the reasonableness

---

[1]     The policies define the "No-Fault Act" as "the Florida Motor Vehicle No-Fault Law **and any amendments**." (Exs. 1-2, Policy Booklet at 13 (emphasis added)).

of a reimbursement.

Plaintiff certainly has the right to contest whatever amount the insurer arrives at is not 80% of "reasonable amount," but the policy language grants Defendants wide latitude in how they make their internal calculation.  Any attempt by Plaintiff to seek declaratory relief that Defendants cannot consider Florida's PIP fee schedule, or any other medical fee schedule, would fail.

The proof and ultimate result in this case will turn on whether the amount calculated by Defendants was, in fact, 80% of a reasonable amount.  If not, the contract was breached. Declaratory relief is not available where the issue is whether an unambiguous contract has been breached.  *Medical Center Health Plan v. Brick*, 572 So. 2d 548 (Fla. 1st DCA 1990). Because any amendment would be futile, the dismissal of the declaratory relief and injunctive counts will be with prejudice.  Count III asserts a valid breach of contract claim and will remain.

It is therefore ORDERED AND ADJUDGED that:

1.      Defendants' Motion to Dismiss the Class Action Complaint (Dkt. #6) is GRANTED in part and DENIED in part as stated herein.

2.       Counts I and II are dismissed with prejudice.

3.      The Motion is denied as to the dismissal of Count III.

4.      In the interest of saving the parties time and money on the two relatively small claims remaining, the parties are ordered to mediate the claims within sixty (60) days.

5.      Since Count III involves two separate assignments, each involving a claim against a different Defendant, Plaintiff shall SHOW CAUSE within twenty (20) days after a failure to settle at mediation why the claims may be joined in one action.

**DONE** and **ORDERED** in Tampa, Florida on December 8, 2010.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2010\10-cv-713.mtd 6.wpd